IN THE CIRCUIT COURT OF THE CITY OF SAINT LOUIS
STATE OF MISSOURI

OLADIMEJI JACOBS ALADE,          )
                                 )
        Plaintiff,               )
                                 )
vs.                              )
                                 )
BARNES-JEWISH HOSPITAL, INC.,    )
                                 )     Cause No.: 1222-CC00426
        Serve at: K. Scott Gronowski  )
               3015 North Ballas Road )
               Saint Louis, MO 63131  )
                                 )     Division No.:
and                              )
                                 )
BJC HEALTH SYSTEM, INC.,         )
                                 )     JURY TRIAL DEMANDED
        Serve at: K. Scott Gronowski  )
               3015 North Ballas Road )     IN AN AMOUNT IN EXCESS OF
               Saint Louis, MO 63131  )     $25,000.
                                 )
and                              )
                                 )
NURI B. FARBER,                  )
                                 )
        Serve at: 4921 Parkview Place  )
               Saint Louis, MO 63110  )
                                 )
and                              )
                                 )
JOHN DOES 1-5                    )
                                 )
        Defendants.              )

## **PETITION**

COMES NOW Plaintiff, Captain Oladimeji Jacobs Alade, D.O., by and through

undersigned counsel, and for his Petition, states to the Court as follows:

## PARTIES

1.      Plaintiff, Captain Oladimeji Jacob Alade, D.O., is a resident of the city of Saint Louis whose address is 4579 Laclede Avenue, #341, St. Louis, Missouri 63108.

2.      Upon information and belief, Defendant Barnes-Jewish Hospital, Inc. ("BJH") is a non-profit corporation created and existing under the laws of the State of Missouri with its principal place of business in the City of Saint Louis, Missouri.

3.      Upon information and belief, Defendant BJC Health System, Inc. ("BJC") is a non-profit corporation created and existing under the laws of the State of Missouri with its principal place of business in the City of Saint Louis, Missouri.

4.      Upon information and belief, Defendant Nuri B. Farber, M.D. ("Farber") is an individual residing in either the County or City of Saint Louis and is the Director of the Residency Training Program at BJH.

5.      Upon information and belief, John Does 1-5 are individuals and/or business entities in the County or City of Saint Louis who participated in and/or planned the conduct complained of herein.

## JURISDICTION AND VENUE

6.      This Court has personal jurisdiction over Defendants because they maintain residences and/or offices within the city limits of St. Louis, Missouri, and the facts giving rise to the causes of action asserted herein took place in the City of Saint Louis, Missouri.

7.      Venue is proper and convenient because the facts giving rise to the causes of action asserted herein took place within the City of Saint Louis, Missouri, and all the fact witnesses are within the City of St. Louis Missouri or within the immediate surrounding areas of the City of St. Louis.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

8.     Plaintiff obtained his Bachelors of Science degree in Biotechnology from York College in New York, Masters of Science in Information Technology from Brooklyn College in New York, and Doctorate of Osteopathic Medicine from the University of Medicine and Dentistry of New Jersey.

9.     In August 2005, while in medical school, Plaintiff was commissioned as 2nd Lieutenant in the New Jersey National Guard. Plaintiff underwent an extensive background check before this commission was granted.

10.     Plaintiff decided to pursue a career in Psychiatry because there is a shortage of Psychiatrists in the United States military at the time.

11.     In March 2008, Defendant BJH accepted Plaintiff into its Psychiatric Residency Program under the Directorship of Defendant Farber. Defendants knew that the Plaintiff was a member of the New Jersey National Guard.

12.     In May 2008, the United States Army Reserve became interested in Plaintiff because of, *inter alia*, his professional training in Psychiatry. Soon thereafter, Plaintiff was commissioned into the United States Army Reserve. Plaintiff once again underwent an extensive background check before being granted said commission.

13.     In June 2008, Plaintiff began his Residency in Psychiatry with Defendant BJH under the supervision of Defendant Farber.

14.     During his first year of residency with Defendant BJH, Plaintiff had average to superior performances while on psych rotations, and excellent performances while on internal medicine, which is typically considered to be the most difficult part of the residency.

15.     From his first year of residency, Defendants BJH and Farber started showing hostility towards Plaintiff's military career.

16.     In or around February 2009, when Plaintiff requested for time off for his military duties via e-mail, Defendant Farber told Plaintiff that his request for a military leave was "unprofessional" and that Plaintiff "should not use any residency time for unprofessional duties."

17.     Defendant Farber's outrageous response to Plaintiff's response to take time off for military duties was a direct violation of the Uniformed Services Employment and Reemployment Rights Act (USERRA), enacted October 1994 and significantly updated in 1996 and 1998 to provide job protection and rights of reinstatement to employees who participate in the National Guard and Reserve.

18.     Defendant Farber began searching for frivolous excuses to further label the Plaintiff "unprofessional." For example, when Plaintiff was sick with flu and sinus infection, his wife called the hospital to report that he was sick, Defendant Farber labeled it "unprofessional." In another example, when Plaintiff informed Defendant Farber via text message that he was sick and could not come in for the day, Defendant Farber also labeled that "unprofessional."

19.     Defendant Farber's actions were simply a pretext to punish and frustrate Plaintiff's military career. To further his scheme, Defendant Farber reported Plaintiff's alleged "unprofessionalism" to the Chief Resident of Internal Medicine at BJH.

20.     After Defendant Farber reported Plaintiff to Chief Resident of Internal Medicine for purported "unprofessionalism," Plaintiff was given a poor evaluation for his internal medicine and neurology rotations. Because of Dr. Farber's "unprofessionalism" labels, Plaintiff was placed on "extra supervision" at the end of his first year.

21.     Sometime thereafter, Defendant Farber informed Plaintiff that he "had a frontal lobe defect," even though Defendant Farber does not possess the skills or training to make such a diagnosis.

22.     During Plaintiff's second year of residency, Defendants continued to seek ways to frustrate Plaintiff's career. In November 2009, Dr. Dragan M. Svrakic ("Dr. Svrakic"), a physician with Defendant BJH, falsely accused Plaintiff of abandoning his post and taking unauthorized leave from his rotation, even though Plaintiff had been authorized to take a two week vacation and provided appropriate notice.

23.     Defendants also falsely accused Plaintiff of a supposed HIPAA violation which resulted in Dr. Svrakic characterizing Plaintiff as "unprofessional."

24.     Despite Defendants' actions, Plaintiff applied for and received his Missouri Permanent Medical License in March 2010.

25.     In June 2010, when Plaintiff's mother was sick in Nigeria, Plaintiff notified the Defendants, and took one week of his vacation time to go and see his sick mother. The Defendants labeled it as "unprofessional" and considered the time off unauthorized.

26.     In August 2010, Plaintiff began his third year of a five year residency. Immediately, Defendants falsely accused Plaintiff of yet another unsubstantiated HIPAA violation. However, this time, they also accused Plaintiff's wife, Dr. Taiwo Alade, as being an accessory to the violation.

27.     Defendants never spoke with Plaintiff's wife. The accusation was frivolous and unsubstantiated. As a result of this accusation, Defendants placed Plaintiff on administrative leave for one week.

28.     In November 2010, a member of Defendant BJH and/or BJC's staff tipped Plaintiff off to the fact that he was not going to stay with BJH when he finished his residency. After this discussion, Defendants made a concerted effort to ensure that Plaintiff would not finish his residency.

29.     On December 2, 2010, Defendant Farber and Dr. Melissa Harbit, the director of the psychiatry forensic program with Defendant BJH, had a meeting with Plaintiff to discuss the supposed unprofessionalism and HIPAA violations, classifying Plaintiff's problems as present and ongoing.

30.     As a result of this meeting, the one week administrative leave was converted to a suspension, which is contrary to the BJH/WUSM Graduate Medical Education's (GME) policies. With this change, the violation becomes reportable to the licensing authorities and Defendants extended the end of Plaintiff's third academic year to July 11, 2011.

31.     Plaintiff was also placed on a restrictive schedule on which no other residents were placed. Plaintiff adhered to the restrictive schedule for two months, receiving only one missing note while other residents in comparison received several missing notes.

32.     Plaintiff was supposed to have a mid-year review in January 2011, but Defendants postponed the meeting three separate times until it was ultimately held on February 14, 2011.

33.     During this meeting, Defendant Farber again brought up past issues and claimed that they were new and ongoing, again placing tougher rules and restrictions upon Plaintiff's work schedule.

34.     Also during this meeting Defendant Farber stated that in one week there would be a committee meeting regarding Plaintiff continuing his residency. Defendant Farber stated that the

outcome of the meeting would be one of three things: Plaintiff's outright dismissal from the program, non-renewal of the Plaintiff's contract for 4th year, or "do nothing."

35.     In a letter dated February 16, 2011 Defendants stated, *inter alia*, that (a) failure of Plaintiff to finish all his notes the same day he sees any patients would be grounds for immediate dismissal, even though this rule contradicts BJH/WUSM GME's policy; and (b) they required Plaintiff to adhere to this rule even though the Plaintiff had to work until 2am or 3am every day in order to finish these notes.

36.     Despite these additional restrictions, Plaintiff's clinical knowledge and notes were superior to those of his peers, as acknowledged by various faculty members. Staff and patients all continued to comment positively about Plaintiff's outstanding clinical skills. Plaintiff had more patient commendations than any other residents while he was in the clinic.

37.     On February 25, 2011, Defendants informed Plaintiff that the committee had decided not to renew his contract for the 4th year and that if Plaintiff did not resign Defendants would write a letter of dismissal.

38.     Defendants informed Plaintiff that writing a letter of dismissal would not be in Plaintiff's best interest and that it will be "messy" for Plaintiff. Defendants further intimated that the matter would severely affect Plaintiff's professional license.

39.     Plaintiff consulted a faculty member for a recommendation letter so as to transfer to another program, but the faculty member told Plaintiff that he would write the letter only if Plaintiff resigned.

40.     On or about March 4, 2011, under pressure of being terminated unless he resigned, Plaintiff resigned his residency with Defendant BJH and/or BJC.

41.    On or about March 5, 2011 at around 10:00 A.M., Plaintiff received an e-mail stating that a faculty meeting has taken place and Plaintiff's resignation letter has been accepted.

42.    However, all faculty members Plaintiff approached had no recollection of a purported "faculty meeting" and they all stated they were told that Plaintiff had "angrily resigned."

43.    Plaintiff tried several times to transfer from Defendant BJH and/or BJC's residency to other medical schools, but Defendants maliciously blocked his transfer by making disparaging remarks about Plaintiff.

44.    Unbeknownst to Plaintiff, Defendant Farber began spreading rumors that Plaintiff has a psychiatric problem, and, therefore, is unfit to practice medicine.

45.    Defendants gave Plaintiff letter stating that the Plaintiff last day with BJH would be July 11, 2011.

46.    On July 8, 2011, Plaintiff was not scheduled to see any patient was not scheduled to see any patients.

47.    It is customary for residents to come in whatever attire they fancy. With his military as the only thing Plaintiff had going for him, Plaintiff attended a colleague's retirement party at BJH in his military attire.

48.    After the retirement party, Plaintiff went to his office to continue packing his belongings in preparation for his departure on July 11, 2011.

49.    While in his office, Plaintiff heard a loud banging on the door, and when he opened the door, he saw a large contingency of BJH Security people with their guns drawn and pointed at him.

50.    The BJH security asked Plaintiff: "are you armed?" Plaintiff replied in the negative, and the BJH security personnel stated that Plaintiff would be placed under arrest because according

to the information they received from Plaintiff's department he had been terminated "weeks ago." Plaintiff told the BJH security personnel that they must have been misinformed because Plaintiff's contract with BJH lasted until July 11, 2011.

51.    The BJH security personnel stated that they would call the police; Plaintiff agreed and sat down on his chair, with his hands visibly behind his head, and he crossed his legs visibly on the desk in front of him. Plaintiff was sitting calmly and waiting for the police to arrive.

52.    Immediately thereafter someone among the BJH security personnel yelled: "take him down" and the entire contingency of the BJH security personnel descended on Plaintiff and beat him until he started going in and out of consciousness.

53.    The BJH Security personnel stripped Plaintiff naked, removed his military boot, held him against his will, confiscated his personal belongings, including his personal laptop and his flash drive.

54.    During the beating by the BJH and/or BJC security personnel, Plaintiff developed chest pains, hyperventilated and experienced a syncope episode. Although the emergency department was a couple of flights downstairs, BJH security personnel instead took Plaintiff to an outside hospital, which was miles away, in violation of Emergency Medical Treatment and Labor Act (EMTALA) statute codified at §1867 of the Social Security Act (the Act), the accompanying regulations in 42 CFR §489.24 and the related requirements at 42 CFR 489.20(l), (m), (q), and (r).

55.    EMTALA requires hospitals with emergency departments to provide a medical screening examination to any individual who comes to the emergency department and requests such an examination, and prohibits hospitals with emergency departments from refusing to examine or treat individuals with an emergency medical condition (EMC).

56.     Defendant BJH and/or BJC's security personnel transported Plaintiff with both hands chained to the stretcher, his left hand was cuffed to the left side of the stretcher, and his right hand was cuffed to the right side of the stretcher.

57.     Defendant BJH and/or BJC's security personnel falsely and maliciously told the Emergency Medical Service (EMS) people that Plaintiff had a history of "schizophrenia" and that Plaintiff had had multiple prior psychiatric hospitalization. These statements are false, and Defendants knew that they were false.

58.     Plaintiff was held against his will and was taken to John Cochran VA hospital in St. Louis, from which he was later transferred to St. Louis University hospital ("SLU") for a purported "further medical and psychiatric evaluation."

59.     Plaintiff was held against his will for another seven hours at SLU Emergency Department before being cleared psychiatrically and discharged; by this time, it was approximately 7am on Saturday July 9, 2011.

60.     Unbeknownst to Plaintiff, after being beaten by Defendant BJH and/or BJC's security personnel, his pictures were posted across the hospital with a warning that Plaintiff was not permitted to come into the hospital.

61.     On July 9, 2011, Plaintiff went to BJH with his brother to retrieve his personal laptop that was taken from him on July 8, 2011. Upon arriving at the hospital, Plaintiff proceeded directly to the Information Area near the water fountain at the South Entrance, a public area in the hospital.

62.     From the Information Area, Plaintiff called the BJH security office, fully identified himself, and requested that his laptop and other personal belonging that were confiscated by the security personnel the day before be returned to him. Instead of returning his laptop and his

flash-drive, Plaintiff was informed, over the phone that his personal belonging *vis-à-vis* laptop and flash-drive were with "investigative services" and would not be returned.

63.     Plaintiff informed the Security Office that if they do not return his laptop and other personal belonging, they should expect hearing from his lawyer.

64.     After ending the call, Plaintiff went to the cafeteria, bought two drinks, and immediately exited the hospital along with his brother.

65.     Unbeknownst to Plaintiff and his brother, while they were leaving the hospital to go to their car, BJH and/or BJC security was tracking them with a security camera and were summoning security personnel to intercept them.

66.     Shortly before they entered their car, both Plaintiff and his brother were intercepted and accosted by the BJH security personnel who proceeded to seize Plaintiff. A video captured the event that transpired.

67.     As can be seen in the video, in spite of Plaintiff's attempt to be civil and cooperative, Plaintiff was again assaulted, beaten up, sustaining serious physical injuries including but not limited to head trauma, and other psychological and emotional trauma caused from experiencing two assaults and batteries within twenty-four hours at a hospital which Plaintiff had worked for three years.

68.     After the beating on July 9, 2011, Plaintiff was seized, handcuffed and dragged to the security center of BJH against his will, even though he was bleeding and in serious pains from various injuries that were inflicted on him by the BJH security personnel.

69.     While in the Security Center, Plaintiff was tightly hand-cuffed with about three to four handcuffs. His repeated requests to ease the handcuffs were rebuffed. He was then told that he

was being charged with Six counts of third degree assault on eight to ten BJH security personnel, and one count of first degree trespassing.

70.     The security personnel never told Plaintiff that he was not allowed back in the hospital grounds and in fact, the Defendants in writing told the Plaintiff that his last day at the hospital as a staff member was July 11, 2011.

71.     Plaintiff did not know that his picture was posted on the walls of the Plaintiff's facility until he was informed when he was accosted by the BJH security personnel.

72.     Even though Plaintiff was visibly injured, security again took him to another psychiatric hospital, and this time they took him against his will and without informing his wife to St. Alexius Hospital, with his upper extremities cuffed to the stretcher. Again, BJH and/or BJC violated Emergency Medical Treatment and Labor Act (EMTALA) statute codified at §1867 of the Social Security Act (the Act), the accompanying regulations in 42 CFR §489.24 and the related requirements at 42 CFR 489.20(l), (m), (q), and (r).

73.     Plaintiff later learned that the primary reason for the trip to St. Alexius Hospital was for yet another forced psychiatric evaluation for an alleged history of being mentally "unstable."

74.     On arrival at St. Alexius, Plaintiff observed that there was a palpable hesitation by the emergency room clinicians on the need for another psychiatric evaluation less than twenty-four hours after undergoing the same evaluation at SLU.

75.     Plaintiff was detained against his will in another "padded room" for about twelve to fourteen hours until he was evaluated by a psychiatrist.

76.     At about 12:00 midnight on July 10, 2011, a psychiatrist arrived and evaluated Plaintiff while his left hand was cuffed to the stretcher and his legs were cuffed together at the ankles.

Plaintiff was also under arrest by a St. Louis Police Officer at the request of Defendants BJH and/or BJC.

77.     Throughout this ordeal, Plaintiff was detained by BJH and/or BJC without being allowed to contact his wife, any member of his family or his lawyer.

78.     After the third psychiatric evaluation at St. Alexius hospital, Plaintiff was again deemed mentally and psychiatrically stable.

79.     Plaintiff was then transported to jail where he was chained and cuffed to other inmates, while being hungry and partially blind since his eye glasses were taken away by Defendants BJC and/or BJH.

80.     Plaintiff was humiliated beyond words during his confinement. He was released from custody at around 3:30pm on July 11, 2011 when a bond was posted to secure his release.

81.     Plaintiff was charged with six counts of assaulting six BJH Security officers for the incident that was captured on video. Plaintiff was also charged with one count of trespass for the same incident.

82.     The prosecuting attorney, after watching a video of the incident, dismissed the six counts of assault alleged by BJH and/or BJC.

83.     A St. Louis City summons was initially issued for trespass on July 9, 2011, but by July 10, 2011 the City summons had been converted to a State of Missouri charge. Unlike a City of St. Louis charge, a State of Missouri charge could greatly affect Plaintiff's professional license.

84.     On or about July 9, 2011, Defendants BJH and/or BJC falsely and maliciously, without any basis in fact whatsoever, reported to Federal authorities, in addition to the charges above, that Plaintiff had made "threats" against the United States Government and against the United States Army.

85.     More specifically, BJH and/or BJC falsely told federal authorities that Plaintiff said he worships Osama bin Laden and that the Fort Hood Army Major Hassan is his hero. Plaintiff made no such statements, and BJH and/or BJC completely fabricated this allegation maliciously in an attempt to damage Plaintiff's military career.

86.     Even more telling, BJH and/or BJC confiscated, *inter alia*, Plaintiff's Army Uniform, his personal laptop, his personal flash-drive. Nothing incriminating whatsoever was found either in Plaintiff's laptop or in his flash-drive.

87.     The false, baseless and malicious allegations by BJC and/or BJH triggered an investigation by the FBI and the Department of Defense.

88.     After intense scrutiny and investigation, Plaintiff was cleared of all allegations by the FBI and Department of Defense.

89.     Nevertheless, because of the false and malicious allegations, the record of Plaintiff arrest and the investigation that were conducted are now part of the Plaintiff's military and medical records and can never be removed.

90.     Before these incidents, Plaintiff had never been arrested before, had never been handcuffed before, had never been to jail before, and had never been taken and confined in a mental hospital before.

91.     Faced with the possibility of losing his Medical License, and harming his military career, Plaintiff spent thousands of dollars defending himself against the trespassing charge.

92.     On December 6, 2011, Plaintiff's trespassing charge was dismissed with prejudice by the prosecutor when Defendants and their agents did not testify at a deposition after being subpoenaed.

93.     As a direct and proximate cause of Defendants' actions, Plaintiff lost his job and when he applied to other schools to complete his psychiatric residency, Defendants blocked his acceptance into other psychiatric residency programs. Plaintiff, then, has been unable to practice medicine or find another form or employment.

94.     Defendants' outrageous, false, and malicious attempt to label Plaintiff mentally ill greatly diminished Plaintiff's reputation in the medical community, military community, and with his neighbors and friends.

95.     Plaintiff is unable to work due to the trauma caused by Defendants' outrageous and false accusations of mental illness and mental instability.

96.     Upon information and belief, the security personnel referenced herein are employees of BJC and/or BJH, and, therefore, Defendants BJH and/or BJC are vicariously liable directly for their tortious actions because they were done at the direction of BJH and/or BJC.

97.     Pleading hypothetically and in the alternative, if the security personnel are third parties to BJC and/or BJH, BJC and/or BJH expressly and/or implicitly consented to the security personnel acting on its/their behalf and was subject to BJC and/or BJC's control.

98.     Defendants' conduct complained of herein was at all times willful, wanton, contumacious and done with an evil motive and in conscious disregard of the rights of Plaintiff, and, therefore, warrants the imposition of punitive and/or exemplary damages.

### COUNT I
### ASSAULT (Events of July 8, 2011)
### (Defendants BJC and/or BJH)

99.     Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Assault by Defendants BJC and/or BJH.

100.    On July 8, 2011, Defendants BJC and/or BJH assaulted Plaintiff:

      a.       The security personnel intended to cause bodily harm, offensive contact, or apprehension to Plaintiff;

      b.       Their actions of barging into Plaintiff's office, pointing a gun at Plaintiff, surrounding Plaintiff, and restraining him evinces such intent and manifested a present ability to injure Plaintiff; and

      c.       Plaintiff was thereby in apprehension of bodily harm or offensive contact because of Defendants' conduct.

101.    Defendants' actions were unlawful and unjustified.

102.    As a direct and proximate result of the Defendants' assault, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

      WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs

of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

## COUNT II
### BATTERY (Events of July 8, 2011)
### (Defendants BJC and/or BJH)

103.    Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Assault by Defendants BJC and/or BJH.

104.    On July 8, 2011, Defendants BJC and/or BJH battered Plaintiff when the security personnel (a) intentionally (b) caused harmful or offensive contact with (c) Plaintiff's person by attacking him and beating him without any justifications.

105.    Plaintiff further states that Defendants' actions of intentionally stripping him naked dehumanized Plaintiff in such a manner that any reasonable person's sensibility would be offended.

106.    As a direct and proximate result of Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

## COUNT III
## FALSE IMPRISONMENT (Events of July 8, 2011)
## (Defendants BJC and/or BJH)

107.   Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges False Imprisonment by Defendants BJC and/or BJH.

108.   On July 8, 2011, Defendants BJC and/or BJH falsely imprisoned Plaintiff: (a) Defendants' intentionally (b) restrained Plaintiff's liberty against his will (c) without justification (d) in such a manner that a reasonable person would have felt that their liberty was restrained when they surrounded Plaintiff and held him in custody until his release the next day on July 9, 2011.

109.   Plaintiff further alleges he was conscious and aware of his detention and restraint by the Defendants.

110.   As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants'

actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

**COUNT IV**
**SLANDER (Events of July 8, 2011)**
**(All Defendants)**

111.   Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Slander.

112.   Plaintiff further alleges that Defendants did make the alleged criminal misconduct accusations against Plaintiff known to the general public, thereby slandering him:

    a.     Defendants intentionally made oral statements stating Plaintiff was "armed and dangerous" that were of or concerning Plaintiff;

    b.     These statements were published in that they were heard by third-parties in the general public;

    c.     The statements were a false statement of fact; and

      d.      Plaintiff suffered damage because Defendants' slanderous remarks greatly diminished him amongst his peers in the medical profession, his military colleagues, his neighbors and his entire community.

113.    Plaintiff further alleges that the Defendants had no privilege when they spoke about the Plaintiff's alleged criminal misconduct to the general public.

114.    As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

      WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

**COUNT V**
**LIBEL (Events of July 8, 2011)**
**(All Defendants)**

115.   Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Libel.

116.   Plaintiff further alleges that Defendants did make the alleged criminal misconduct accusations against Plaintiff known to the general public, thereby libeling him:

   a.      Defendants intentionally posted written pictures and statements saying that Plaintiff was "armed and dangerous" that were of or concerning Plaintiff;

   b.      These statements were published in that they were heard by third-parties in the general public;

   c.      The statements were a false statement of fact; and

   d.      Plaintiff suffered damage because Defendants' slanderous remarks greatly diminished him amongst his peers in the medical profession, his military colleagues, his neighbors and his entire community.

117.   Plaintiff further alleges that the Defendants had no privilege when they published statements concerning Plaintiff's alleged criminal misconduct to the general public.

118.   As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

## COUNT VI
### SLANDER (Events of July 8, 2011)
### (All Defendants)

119.   Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Slander.

120.   Plaintiff further alleges that Defendants did make statements concerning Plaintiff's purported mental health known to the general public, thereby slandering him:

a.   Defendants intentionally made oral statements that Plaintiff was "mentally unstable" that were of or concerning Plaintiff;

b.   These statements were published in that they were heard by third-parties in the general public;

c.   The statements were a false statement of fact; and

d.   Plaintiff suffered damage because Defendants' slanderous remarks greatly diminished him amongst his peers in the medical profession, his military colleagues, his neighbors and his entire community.

121.   Plaintiff further alleges that Defendants had no privilege when they spoke about the Plaintiff's alleged criminal misconduct to the general public.

122.    As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

## COUNT VII
### LIBEL (Events of July 8, 2011)
### (All Defendants)

123.    Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Libel.

124.    Plaintiff further alleges that Defendants did make the alleged statements concerning Plaintiff's mental health known to the general public, thereby libeling him:

a.      Defendants intentionally posted written pictures and statements saying that Plaintiff was "mentally unstable" that were of or concerning Plaintiff;

b.      These statements were published in that they were seen by third-parties in the general public;

c.      The statements were a false statement of fact; and

d.      Plaintiff suffered damage because Defendants' libelous remarks greatly diminished him amongst his peers in the medical profession, his military colleagues, his neighbors and his entire community.

125.    Plaintiff further alleges that the Defendants had no privilege when they published statements concerning Plaintiff's alleged mental health deficiencies to the general public.

126.    As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the

compensatory damages and sufficient enough to deter any similar or future conduct; for the costs

of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further

relief that this Court deems just and proper.

## COUNT VIII
## INJURIOUS FALSEHOOD (Events of July 8, 2011)
## (All Defendants)

127.    Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of

this Petition as if set forth fully herein, and further alleges Injurious Falsehood.

128.    Plaintiff further alleges that Defendants did make the alleged statements concerning

Plaintiff's mental health known to the general public and/or to the schools where Plaintiff

applied to complete his residency, thereby committing injurious falsehood:

a.       Defendants intentionally published the statements saying that Plaintiff had a

"history of mental illness" and was "armed and dangerous" to the general public and/or to other

schools to harm Plaintiff's pecuniary interests, or Defendants should have known the statements

would have harmed Plaintiff's pecuniary interests; and

b.       Defendants knowingly made the false statements of fact or did so in reckless

disregard of its truth or falsity.

129.    Plaintiff further alleges that Defendants had no privilege when they published the

Plaintiff's alleged mental health problems to the general public and/or to the schools where the

Plaintiff applied to complete his residency.

130.    As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has

sustained numerous physical injuries some of which are permanent in nature, including, but not

limited to severe emotional distress, depression, humiliation, embarrassment, and other related

physical and emotional injuries. As a further direct and proximate result of the Defendants'

actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

### COUNT IX
### INVASION OF PRIVACY – TORTIOUS INTRUSION INTO SECLUSION
### (Events of July 8, 2011)
### (All Defendants)

131.    Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Invasion of Privacy by way of Intrusion into Seclusion.

132.    Plaintiff alleges that the Defendants did make the statements of Plaintiff's private affairs involving his resignation or dismissal from his residency to the hearing of the general public. Plaintiff further alleges that the Defendants did make the statements and/or published the same about Plaintiff's private affairs involving his health in violation of HIPAA laws to the hearing of the general public.

133.    Through actions complained of herein, Defendants committed an intentional invasion of Plaintiff's privacy through an intrusion into Plaintiff's seclusion:

        a.      Plaintiff's resignation and the facts leading up thereto are inherently secret and private;

        b.      Plaintiff at all times had a right to keep that subject matter private;

        c.      Defendants obtained said private information and documentation through unreasonable means by closely observing Plaintiff in his work routine throughout the day to make a diagnosis entering Plaintiff's office without his permission;

        d.      Defendants' intrusion was by means that were unreasonable or highly offensive to a reasonable person in that the Defendants made clinical diagnoses of Plaintiff without telling him.

134.    As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

        WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein

at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

## COUNT X
## INVASION OF PRIVACY – PUBLICATION OF PRIVATE FACTS
### (Events of July 8, 2011)
### (All Defendants)

135.    Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Invasion of Privacy by way of Publication of Private Facts.

136.    Plaintiff alleges that the Defendants did make the statements of Plaintiff's private affairs involving his resignation or dismissal from his residency to the hearing of the general public. Plaintiff further alleges that the Defendants did make the statements and/or published the same about Plaintiff's private affairs involving his health in violation of HIPAA laws to the hearing of the general public.

137.    Through actions complained of herein, Defendants committed an intentional invasion of Plaintiff's privacy by unreasonable publicity given to Plaintiff's private life:

      a.    Defendants published facts concerning Plaintiff's resignation and work record to his co-workers, the general public, and other medical schools;

      b.    Plaintiff did not waive or consent to such publication;

      c.    The information published by Defendants was a private matter concerning only the Plaintiff and which third-parties, and particularly the general public, have no legitimate concern; and

d.      Defendants' publication was designed to embarrass and bring shame and humiliation upon Plaintiff.

138.    As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

### COUNT XI
### ASSAULT (Events of July 9, 2011)
### (Defendants BJC and/or BJH)

139.    Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Assault by Defendants BJC and/or BJH.

140.    On July 9, 2011, Defendants BJC and/or BJH assaulted Plaintiff after he attempted to retrieve his personal possessions:

        a.    The security personnel intended to cause bodily harm, offensive contact, or apprehension;

        b.    Their actions of being armed, surrounding Plaintiff with eight to ten security guards and cutting off any means of escape evinces such intent and manifested a present ability to injure Plaintiff; and

        c.    Plaintiff was thereby in apprehension of bodily harm or offensive contact because of Defendants' conduct.

141.    Defendants' actions were unlawful and unjustified.

142.    As a direct and proximate result of the Defendants' assault, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

        WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the

compensatory damages and sufficient enough to deter any similar or future conduct; for the costs

of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further

relief that this Court deems just and proper.

## COUNT XII
### BATTERY (Events of July 9, 2011)
### (Defendants BJC and/or BJH)

143.    Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of

this Petition as if set forth fully herein, and further alleges Assault by Defendants BJC and/or

BJH.

144.    On July 9, 2011, Defendants BJC and/or BJH battered Plaintiff when the security

personnel (a) intentionally (b) caused harmful or offensive contact with (c) Plaintiff's person by

attacking him and beating him without any justifications after Plaintiff attempted to obtain his

personal possessions.

145.    As a direct and proximate result of Defendants' acts, and/or omission, Plaintiff has

sustained numerous physical injuries some of which are permanent in nature, including, but not

limited to severe emotional distress, depression, humiliation, embarrassment, and other related

physical and emotional injuries. As a further direct and proximate result of the Defendants'

actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses

for medical care and attention, has suffered and will continue to suffer much physical pain and

mental anguish, and has suffered a loss of wages, loss of his professional career, long term and

permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his

wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly

and severally for compensatory damages in an amount in excess of twenty-five thousand

($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

**COUNT XIII**
**FALSE IMPRISONMENT (Events of July 9, 2011)**
**(Defendants BJC and/or BJH)**

146.    Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges False Imprisonment by Defendants BJC and/or BJH.

147.    On July 9, 2011, Defendants BJC and/or BJH falsely imprisoned Plaintiff when: (a) Defendants' intentionally (b) restrained Plaintiff's liberty against his will (c) without justification (d) in such a manner that a reasonable person would have felt that their liberty was restrained when they surrounded Plaintiff after he attempted to retrieve his personal possessions and detained him until July 10, 2011.

148.    Plaintiff further alleges he was conscious and aware of his detention and restraint by the Defendants.

149.    As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and

mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

### COUNT XIV
### SLANDER
### (Events of July 9, 2011)
### (All Defendants)

150.   Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Slander.

151.   Plaintiff further alleges that Defendants did make the alleged criminal misconduct accusations against Plaintiff known to the general public, thereby slandering him:

a.     Defendants intentionally made oral statements that Plaintiff was "armed and dangerous" that were of or concerning Plaintiff;

b.     These statements were published in that they were heard by third-parties in the general public;

c.     The statements were a false statement of fact; and

     d.     Plaintiff suffered damage because Defendants' slanderous remarks greatly diminished him amongst his peers in the medical profession, his military colleagues, his neighbors and his entire community.

152.    Plaintiff further alleges that the Defendants had no privilege when they spoke about the Plaintiff's alleged criminal misconduct to the general public.

153.    As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

     WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

**COUNT XV**
**LIBEL**
**(Events of July 9, 2011)**

**(All Defendants)**

154.   Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Slander.

155.   Plaintiff further alleges that Defendants did make the alleged criminal misconduct accusations against Plaintiff known to the general public, thereby libeling him:

     a.   Defendants intentionally posted written pictures and statement saying that Plaintiff was "armed and dangerous" that were of or concerning Plaintiff;

     b.   These statements were published in that they were heard by third-parties in the general public;

     c.   The statements were a false statement of fact; and

     d.   Plaintiff suffered damage because Defendants' slanderous remarks greatly diminished him amongst his peers in the medical profession, his military colleagues, his neighbors and his entire community.

156.   Plaintiff further alleges that the Defendants had no privilege when they published statements concerning Plaintiff's alleged criminal misconduct to the general public.

157.   As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and

permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

## COUNT XVI
### SLANDER (Events of July 9, 2011)
### (All Defendants)

158.    Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Slander.

159.    Plaintiff further alleges that Defendants did make statements concerning Plaintiff's purported mental health known to the general public, thereby slandering him:

a.      Defendants intentionally made oral statements that Plaintiff was "mentally unstable" that were of or concerning Plaintiff;

b.      These statements were published in that they were heard by third-parties in the general public;

c.      The statements were a false statement of fact; and

d.      Plaintiff suffered damage because Defendants' slanderous remarks greatly diminished him amongst his peers in the medical profession, his military colleagues, his neighbors and his entire community.

160.   Plaintiff further alleges that Defendants had no privilege when they spoke about the Plaintiff's alleged criminal misconduct to the general public.

161.   As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

### COUNT XVII
### LIBEL (Events of July 9, 2011)
### (All Defendants)

162.   Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Libel.

163.   Plaintiff further alleges that Defendants did make the alleged statements concerning Plaintiff's mental health known to the general public, thereby libeling him:

     a.     Defendants intentionally posted written pictures and statements that Plaintiff was "mentally unstable" that were of or concerning Plaintiff;

     b.     These statements were published in that they were seen by third-parties in the general public;

     c.     The statements were a false statement of fact; and

     d.     Plaintiff suffered damage because Defendants' libelous remarks greatly diminished him amongst his peers in the medical profession, his military colleagues, his neighbors and his entire community.

164.   Plaintiff further alleges that the Defendants had no privilege when they published statements concerning Plaintiff's alleged mental health deficiencies to the general public.

165.   As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand

($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein

at the maximum statutory rate; punitive damages that will be at least nine times greater than the

compensatory damages and sufficient enough to deter any similar or future conduct; for the costs

of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further

relief that this Court deems just and proper.

**COUNT XVIII**
**INJURIOUS FALSEHOOD (Events of July 9, 2011)**
**(All Defendants)**

166.    Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of

this Petition as if set forth fully herein, and further alleges Injurious Falsehood.

167.    Plaintiff further alleges that Defendants did make the alleged statements concerning

Plaintiff's mental health known to the general public and/or to the schools where Plaintiff

applied to complete his residency, thereby committing injurious falsehood:

    a.    Defendants intentionally published the statements saying that Plaintiff had a

"history of mental illness" and was "armed and dangerous" to the general public and/or to other

schools to harm Plaintiff's pecuniary interests, or Defendants should have known the statements

would have harmed Plaintiff's pecuniary interests; and

    b.    Defendants knowingly made the false statements of fact or did so in reckless

disregard of its truth or falsity.

168.    Plaintiff further alleges that Defendants had no privilege when they published the

Plaintiff's alleged mental health problems to the general public and/or to the schools where the

Plaintiff applied to complete his residency.

169.    As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has

sustained numerous physical injuries some of which are permanent in nature, including, but not

limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

## COUNT XIX
## INVASION OF PRIVACY – TORTIOUS INTRUSION ON SECLUSION
### (Events of July 9, 2011)
### (All Defendants)

170.    Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Invasion of Privacy by way of Intrusion into Seclusion.

171.    Plaintiff alleges that the Defendants did make the statements of Plaintiff's private affairs involving his resignation or dismissal from his residency to the hearing of the general public. Plaintiff further alleges that the Defendants did make the statements and/or published the same

about Plaintiff's private affairs involving his health in violation of HIPAA laws to the hearing of the general public.

172.   Through actions complained of herein, Defendants committed an intentional invasion of Plaintiff's privacy through an intrusion into Plaintiff's seclusion:

a.      Plaintiff's resignation and the facts leading up thereto are inherently secret and private;

b.      Plaintiff at all times had a right to keep that subject matter private;

c.      Defendants obtained said private information and documentation through unreasonable means by closely observing Plaintiff in his work routine throughout the day to make a diagnosis entering Plaintiff's office without his permission;

d.      Defendants' intrusion was by means that were unreasonable or highly offensive to a reasonable person in that the Defendants made clinical diagnoses of Plaintiff without telling him.

173.   As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

## COUNT XX
### INVASION OF PRIVACY – PUBLICATION OF PRIVATE FACTS
#### (Events of July 9, 2011)
#### (All Defendants)

174.    Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Invasion of Privacy by way of Publication of Private Facts.

175.    Plaintiff alleges that the Defendants did make the statements of Plaintiff's private affairs involving his resignation or dismissal from his residency to the hearing of the general public. Plaintiff further alleges that the Defendants did make the statements and/or published the same about Plaintiff's private affairs involving his health in violation of HIPAA laws to the hearing of the general public.

176.    Through actions complained of herein, Defendants committed an intentional invasion of Plaintiff's privacy through unreasonable publicity given to Plaintiff's private life:

    a.    Defendants published facts concerning Plaintiff's resignation and work record to his co-workers, the general public, and other medical schools;

    b.    Plaintiff did not waive or consent to such publication;

c.      The information published by Defendants was a private matter concerning only the Plaintiff and which third-parties, and particularly the general public, have no legitimate concern; and

d.      Defendants' publication was designed to embarrass and bring shame and humiliation upon Plaintiff.

177.    As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

## COUNT XXI
## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS/EXPECTANCY
### (Events of July 8-9, 2011)
### (All Defendants)

178.    Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Tortious Interference with Business Expectancy.

179.    Through Defendants' conduct complained of herein, Defendants' tortiously interfered with Plaintiff's valid business expectancies:

a.    Plaintiff had valid business expectancies with the United States Army and United States Army Reserve;

b.    Defendants were aware of said business expectancies;

c.    Defendants intentionally interfered with said expectancies by, *inter alia*, falsely reporting that Plaintiff has made threats against the United States government, admired/worshipped Osama bin Laden, and idolized the Fort Hood terrorist, Major Hassan, and labeling him mentally ill;

d.    Defendants were without justification for their actions; and

e.    Plaintiff suffered damages with said business expectancies because Plaintiff has experienced a loss of credibility and the U.S. Army has mandated that he undergo 12 hour psychiatric evaluations.

180.    Plaintiff further alleges that Defendants violated HIPAA, USERRA and EMTALA in order to effectuate their interference with the business relationship of the Plaintiff and the United States Army Reserve.

181.    As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants'

actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses

for medical care and attention, has suffered and will continue to suffer much physical pain and

mental anguish, and has suffered a loss of wages, loss of his professional career, long term and

permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his

wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly

and severally for compensatory damages in an amount in excess of twenty-five thousand

($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein

at the maximum statutory rate; punitive damages that will be at least nine times greater than the

compensatory damages and sufficient enough to deter any similar or future conduct; for the costs

of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further

relief that this Court deems just and proper.

**COUNT XXII**
**MALICIOUS PROSECUTION**
**(Events of July 9, 2011)**
**(All Defendants)**

182.    Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of

this Petition as if set forth fully herein, and further alleges Malicious Prosecution:

a.    A prosecution for criminal assault and criminal trespass was commenced by the

City of St. Louis and State of Missouri;

b.    Defendants instigated the prosecution of these claims against Plaintiff;

c.    The prosecutor unilaterally dismissed the charges of criminal assault and on

December 6, 2011 the criminal trespass charged was dismissed by the Court in favor of Plaintiff

when Defendants and their agents decided not to testify after being subpoenaed to a deposition;

     d.     There was no probable cause to believe that Plaintiff committed the alleged crimes and prosecute the claims;

     e.     Defendants conduct in instigating the prosecutions was motivated by malice for Plaintiff; and

     e.     Plaintiff was damaged in part because he now has an arrest record.

183.    As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

     WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

**COUNT XXIII**
**CIVIL CONSPIRACY**
**(Events of July 9, 2011)**
**(All Defendants)**

184.    Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges the existence of a Civil Conspiracy:

185.    As referenced herein, on July 9, 2011, as Plaintiff was walking to his car, Defendants tracked him with a security camera, summoned other security personnel to intercept him, assaulted him, battered him, and falsely imprisoned him.

186.    Plaintiff alleges that at all time there was a meeting of the mind between the security camera operator and many security people on the ground to illegally intercept and commit unlawful acts herein on the Plaintiff.

187.    Defendants committed such tortious acts through affirmative and overt steps, causing Plaintiff to suffer damage to his person and dignity.

188.    As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

189.    As a result of such civil conspiracy, all Defendants should be jointly and severally liable for all of the actions committed in furtherance of the conspiracy to commit the tortious acts aforesaid, and all harm which proximately resulted therefrom, even if it comes to light that an individual Defendant did not directly commit such an act.

WHEREFORE, Plaintiffs pray for this Court's Order finding the existence of a civil conspiracy between Defendants; that this Court grant Plaintiff damages in excess of $25,000.00 to be proven at trial, granting pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; and for such other and further relief that this Court deems just and proper.

## COUNT XXIV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Events of July 8-9, 2011)
### (All Defendants)

190.    Plaintiff hereby incorporates by reference and re-alleges all of the previous paragraphs of this Petition as if set forth fully herein, and further alleges Intentional Infliction of Emotional Distress.

191.    Through Defendants conduct complained of herein, Defendants' committed intentional infliction of emotional distress in the following respects:

a.    That Defendants did, by repeated conduct, including but not limited to the alleged assaults, false imprisonments, false accusations to the police and federal government, and defamatory statements, intentionally cause emotional distress to the Plaintiff which is/was "medically diagnosable" and "medically significant"; and

b.    That Defendants' conduct was so extreme and outrageous in character as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

192.    As a direct and proximate result of the Defendants' acts, and/or omission, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to severe emotional distress, depression, humiliation, embarrassment, and other related physical and emotional injuries. As a further direct and proximate result of the Defendants'

actions and/or omissions, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages, loss of his professional career, long term and permanent damages to his ability to practice medicine and Psychiatry, and permanent loss in his wage-earning capacity.

WHEREFORE, Plaintiff, demands judgment against Defendants BJH and/or BJC, jointly and severally for compensatory damages in an amount in excess of twenty-five thousand ($25,000.00) to be proven at trial; pre and post judgment interest on all amounts awarded herein at the maximum statutory rate; punitive damages that will be at least nine times greater than the compensatory damages and sufficient enough to deter any similar or future conduct; for the costs of these proceedings; for the cost of the Plaintiff's attorney fees; and for such other and further relief that this Court deems just and proper.

Respectfully submitted,

Date: January _25_, 2012

Andrew Ndubisi Ucheomumu, LL.M. Esquire
Lead Counsel for the Plaintiff
THE UCHEOMUMU LAW GROUP, LLC.
4938 Hampden Lane, #133
Bethesda, MD 20814
Phone: 301-633-0079
E-mail: andrew@ucheomumulaw.com

January _25_, 2012

Ositadimma V. Onyia, PhD. Esquire
Associate Counsel
The Onyia Law Firm, LLC.
3000 E. Main Street, #220
Columbus, OH 43209
Phone: 614-489-9495
Fax: 614-654-5991
E-mail: osita@onyialaw.com

January _25_, 2012

Henry Elster, Esquire
*Pro Hac Vice* local counsel to Plaintiff's Attorney
The Elster Law Office, LLC
7750 Clayton Road, Suite 102
St. Louis, Missouri 63117
(Telephone) (314) 283-8930
(Facsimile) (314) 645-7901
(E-mail) henry@elsterlaw.com

I, Oladimeji Jacobs Alade, hereby certify that I have read the foregoing information, and that it is true according to my best information, knowledge, and belief.


Capt. Oladimeji Jacob Alade, D.O.
Plaintiff



# CLERK OF THE SUPREME COURT
## STATE OF MISSOURI
### POST OFFICE BOX 150
### JEFFERSON CITY, MISSOURI
65102

BILL L. THOMPSON
INTERIM CLERK

TELEPHONE
(573) 751-4144

December 15, 2011

*This will hereby acknowledge receipt of $100 as required by
Rule 6.01(m) for Andrew Ndubisi Ucheomumu, appearing in
Oladimeji Jacob Alade v. Barnes Jewish Hospital, et al., Case
No. Not Available, before the Circuit Court of St. Louis County,
State of Missouri.*

Bill L. Thompson

Bill L. Thompson, Interim Clerk

STATE OF MISSOURI          )
                           )ss
CITY OF ST. LOUIS          )


     I, M. JANE SCHWEITZER, Clerk of the Circuit Court within and for the City of St. Louis, State of Missouri, do hereby certify that the foregoing are true copies of original documents on files and recorded in my office for the following case
**ENTIRE FILE AND DOCKET SHEET**

St. Louis City case number 1222-CC00426
     WITNESS my hand and SEAL of said Court this 13TH, Day of MARCH, 2012.

                          _____
                          **M. Jane Schweitzer**
                          **Circuit Clerk**

                          **By:** _____
                          **Deputy Clerk**



SEAL of the CIRCUIT COURT