UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| OLADIMEJI JACOBS ALADE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:12-CV-497 CAS |
| ) | |
| BARNES-JEWISH HOSPITAL, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This removed matter is before the Court on plaintiff Oladimeji Jacobs Alade's motion to remand the case to state court. The motion is fully briefed and ready for decision. For the following reasons, the Court concludes that it lacks subject matter jurisdiction over this action and plaintiff's motion to remand must be granted.

## Background

Plaintiff filed this action in the Circuit Court for the City of St. Louis, State of Missouri, alleging twenty-four state law counts against the defendants: assault (Counts I, XI), battery (Counts II, XII), false imprisonment (Counts III, XIII), slander (Counts IV, VI, XIV, XVI), libel (Counts V, VII, XV, XVII), injurious falsehood (Counts VIII, XVIII), invasion of privacy–tortious intrusion into seclusion (Counts IX, XIX), invasion of privacy–publication of private facts (Counts X, XX), intentional interference with business relations/expectancy (Count XXI), malicious prosecution (Count XXII), civil conspiracy (Count XXIII), and intentional infliction of emotional distress (Count XXIV).

Plaintiff's Petition alleges that he began a Residency in Psychiatry with defendant Barnes-Jewish Hospital, Inc. ("BJH") in June 2008 under the supervision of defendant Nuri B. Farber and,

at the time, he had a commission in the United States Army Reserve ("USAR"). Plaintiff alleges that from the first year of his Residency, BJH and Farber showed hostility toward his military career, and when plaintiff asked for time off in February 2009 for military duties, Farber told plaintiff his request was "unprofessional" and that plaintiff "should not use any residency time for unprofessional duties." Petition at 4, ¶¶ 15-16. Plaintiff alleges that Farber then began searching for frivolous reasons to label him as "unprofessional," which was a pretext for punishing and frustrating plaintiff's military career. Plaintiff alleges that as a result of Farber's "'unprofessionalism' labels," he was placed on an "extra supervision" status. Plaintiff alleges that throughout the next two years of his Residency, he was falsely accused of abandoning his post and committing HIPPA[1] violations, was placed on administrative leave, suspended from the Residency program, and placed on a restrictive schedule. In February 2011, defendants informed plaintiff that a committee had decided not to renew his contract for the fourth year, and that plaintiff would be dismissed from the Residency program if he did not resign. Plaintiff resigned his Residency under pressure on March 4, 2011. Plaintiff alleges that Farber thereafter began spreading rumors that plaintiff had psychiatric problems and was unfit to practice medicine.

Plaintiff was given a letter stating that his last day of employment was to be July 11, 2011. On July 8, 2011, plaintiff was not scheduled to see any patients, but attended a colleague's retirement party at BJH dressed in his "military attire." After leaving the party, plaintiff went to his office to pack some of his things. There was a loud banging on plaintiff's office door, and when he opened the door, he saw a "large contingency" of BJH security personnel with their guns drawn and pointed at him. The security personnel asked plaintiff if he was armed and he replied that he was

---

[1] HIPPA is the Health Insurance Portability and Accountability Act of 1996.

not. They told plaintiff he would be placed under arrest because, according to information they received, plaintiff's employment had been terminated weeks prior.

The security personnel stated they would call the police, and plaintiff agreed and sat down on his chair waiting for the police to arrive. Immediately thereafter, someone among the security personnel yelled "take him down," and the "entire contingency of the BJH security personnel descended on Plaintiff and beat him until he started going in and out of consciousness." Petition at 9, ¶ 52. Plaintiff's clothes were removed and his personal belongings were confiscated, including his laptop computer.

During the beating, plaintiff developed chest pains, hyperventilated, and experienced a syncope episode. Although there was an emergency room at BJH, the security personnel took plaintiff to an outside hospital, transporting him with his hands cuffed to a stretcher. The security personnel falsely told the EMS responders that plaintiff had a history of schizophrenia and had multiple prior psychiatric hospitalizations. Plaintiff was taken against his will to John Cochran V.A. Hospital and then was transferred to St. Louis University Hospital, where he was held for seven hours before being cleared psychiatrically and discharged.

The next day, July 9, 2011, plaintiff and his brother went to BJH to obtain the return of his computer and other belongings. They went to the Information Area and plaintiff called the Security Office to request the return of his property. Plaintiff was informed that his belongings were with "investigative services" and would not be returned. Plaintiff responded that BJH would hear from his lawyer. Plaintiff and his brother went to the BJH cafeteria to purchase drinks and then immediately exited the hospital. Shortly before they entered their car in the parking lot, they were intercepted by BJH security personnel and plaintiff was seized and beaten. This incident was captured on security video. Plaintiff was handcuffed and dragged, bleeding, to the BJH security

3

center, where he was told he would be charged with six counts of third degree assault and one count of trespassing. Plaintiff later learned that his picture had been posted at BJH with a warning that he was not permitted to enter the hospital. Plaintiff had never been told he would not be allowed back on the BJH grounds, and he knew that pursuant to the letter he received, his employment at BJH did not officially end for two more days.

Plaintiff was taken against his will to St. Alexius Hospital, with his hands cuffed to the stretcher, for another psychiatric evaluation. Plaintiff was detained for twelve to fourteen hours before he was evaluated by a psychiatrist at approximately midnight. Plaintiff was finally examined and was deemed mentally and psychiatrically stable. He was then transported to jail, where he remained until he was released on bond at approximately 3:30 p.m. on July 11, 2011. Plaintiff was charged with six counts of assaulting BJH security officers and one count of trespass. The charges were originally filed by St. Louis City but were converted to state charges. The six counts of assault were dismissed by the prosecuting attorney after he viewed the videotape of the incident in the BJH parking lot. The trespass charge was dismissed on December 6, 2011.

Plaintiff alleges that on or about July 9, 2011, the defendants falsely and maliciously reported to federal authorities that plaintiff had made "threats" against the United States Government and United States Army, specifically that plaintiff stated he "worships Osama bin Laden and that the Fort Hood Army Major Hassan is his hero." Petition at 14, ¶ 85. This false report triggered an investigation of plaintiff by the Federal Bureau of Investigation and the Department of Defense. Plaintiff was ultimately cleared of all allegations, but the arrest and investigation records are now part of plaintiff's military and medical records.

Plaintiff alleges that he lost his job as a result of defendants' actions, and that when he applied to other schools to complete his psychiatric residency, defendants blocked his acceptance

4

into those programs. Plaintiff alleges that he suffered permanent physical injuries and emotional injuries as a result of defendants' conduct, and that he is unable to work as a result of defendants' false and malicious attempts to label him as mentally ill and mentally unstable, which diminished his reputation in the medical and military communities. Plaintiff seeks actual and punitive damages in each of the twenty-four counts.

Defendants Barnes-Jewish Hospital, BJC Health System, Inc. and Farber removed the action to this Court on March 16, 2012. Although plaintiff's Petition asserts only state law claims, the defendants contend in the Notice of Removal that the Petition turns on substantial questions of federal law because plaintiff's factual allegations center on a theory that defendants targeted him because of his participation in the U.S. Army in violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4311, et seq. ("USERRA"). Thus, defendants contend the petition creates substantial federal issues that confer federal jurisdiction under 28 U.S.C. § 1331 because the petition "alleges USERRA violations" and "raise[s] significant federal questions concerning USERRA, its scope and application." Defendant also assert that the Petition raises significant federal questions that confer federal question jurisdiction with respect to the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA"). Plaintiff disagrees and moves to remand the case to state court.

**Discussion**

The party invoking jurisdiction bears the burden of proof that all prerequisites to jurisdiction are satisfied. Hatridge v. Aetna Cas. & Sur. Co., 415 F.2d 809, 814 (8th Cir. 1969). Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand. Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d 619, 625 (8th Cir. 1997). In determining whether a claim "arises under" federal

5

law, courts must be "mindful that the nature of federal removal jurisdiction—restricting as it does the power of the states to resolve controversies in their own courts—requires strict construction of the legislation permitting removal." Nichols v. Harbor Venture, Inc., 284 F.3d 857, 861 (8th Cir. 2002) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941)).

The "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 813 (1986); see also Gully v. First Nat'l Bank, 299 U.S. 109 (1936) ("Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit.") Federal jurisdiction exists only in those circumstances where a federal question is presented by a well-pleaded complaint which shows that either federal law creates the cause of action, or the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 13 (1983).

The Supreme Court has called the latter category of federal question cases "special and small," Empire Healthchoice Assurance Inc. v. McVeigh, 547 U.S. 677, 699 (2006), and has cautioned that the substantial question of federal law exception to the well-pleaded complaint rule "must be read with caution." Merrell Dow, 478 U.S. at 809. The relevant inquiry is, "[D]oes a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg, 545 U.S. 308, 314 (2005).

Here, defendants have failed to meet their burden of establishing subject matter jurisdiction. Although plaintiff's Petition makes multiple, specific reference to federal statutes USERRA and EMTALA, and alleges that defendant Farber and BJH showed hostility towards plaintiff's military

6

career, the underlying causes of action do not arise under USERRA or EMTALA within the meaning of 28 U.S.C. § 1331. None of plaintiff's claims include a federal cause of action under either USERRA or EMTALA. All counts of the Petition assert state law claims. The Petition's references to alleged violations of USERRA and EMTALA by the defendants are part of the factual background to plaintiff's assault, battery, false imprisonment, and other state law claims.

This case is readily distinguishable from the Supreme Court's <u>Grable</u> case, which is the primary authority defendants cite to support removal. 545 U.S. 308. <u>Grable</u> was a quiet title action in which Grable sued Darue to recover real property that the Internal Revenue Service seized to satisfy Grable's federal tax deficiency and then sold to Darue. Grable's quiet title suit specifically asserted that the IRS's seizure of the property was invalid because the IRS failed to satisfy the notice requirements of a federal statute. <u>Grable</u>, 545 U.S. at 310-11. The Supreme Court held that <u>Grable</u> was properly removed from state court based on federal question jurisdiction even though the petition only asserted a state law claim. This was because whether Grable was given notice within the meaning of the federal statute was an essential element of its quiet title claim, the meaning of the federal statute was actually in dispute, and that dispute was "the only legal or factual issue contested in the case." <u>Id.</u> at 315. The Court stated that the meaning of a federal tax law "is an important issue of federal law that sensibly belongs in a federal court," and noted the federal government's "strong interest in the prompt and certain collection of delinquent taxes." <u>Id.</u> Finally, the Court determined that federal jurisdiction was "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331," <u>id.</u> at 314-15, because only rare state title cases would raise a contested matter of federal law, and thus federal jurisdiction over such cases would "portend only a microscopic effect on the federal-state division of labor." <u>Id.</u> at 315.

In Empire, the Supreme Court observed that Grable occupies a "special and small category" of cases permitting removal where federal question jurisdiction is predicated on the centrality of a federal issue, and "emphasized that it takes more than a federal element 'to open the 'arising under' door." 547 U.S. at 699 & n.5, 701 (quoting Grable, 545 U.S. at 313). Central to Grable's holding is that the federal question at issue was "substantial" and a "nearly 'pure issue of law,'" and its resolution was "both dispositive of the case and would be controlling in numerous other cases." Empire, 547 U.S. at 700 (quoting Grable, 545 U.S. at 313).

Here, in contrast, plaintiff alleges that defendants' actions violated USERRA and EMTALA, but does not assert a cause of action under those statutes. None of plaintiff's state law claims are based on alleged violations of these federal statutes. As discussed in plaintiff's memorandum in support of his motion to remand, plaintiff can establish the prima facie elements of each of his state law claims without any reference to alleged violations of federal statutes. Plaintiff's allegations that the defendants mistreated him because of his military service in violation of USERRA merely form part of the factual background of the case, by offering an explanation or motive for the defendants' conduct. Plaintiff's allegations that defendants violated EMTALA by sending him to other hospitals for psychiatric evaluation appear to be superfluous, as plaintiff does not assert an EMTALA claim.[2]

In further contrast to Grable, all of plaintiff's claims involve the actions of private defendants, not a federal agency, and require a fact-specific inquiry into defendants' conduct. The resolution of plaintiff's claims would not be controlling in numerous other cases, and this case does not present a "nearly pure issue of law, one that could be settled once and for all and thereafter

---

[2]The Court notes that plaintiff's false imprisonment claims are not dependent on a violation of EMTALA. Plaintiff could assert these claims if he had been held against his will for psychiatric evaluation at BJH, rather than taken to other hospitals.

8

would govern numerous [similar] cases." Empire, 547 U.S. at 700 (internal quotation marks omitted). This is the type of intentional tort case traditionally heard in state courts, and to entertain this action in a federal forum based on federal question jurisdiction would disturb the "balance of federal and state judicial responsibilities," Grable, 545 U.S. at 314, as it would open the door to "a potentially enormous shift of traditionally state court cases into federal courts." Id. at 319.

The defendants assert that the "success of [plaintiff's] state law claims necessarily turns on the success of his core theory that Defendants violated federal law in retaliating against him." Defs.' Opp'n Mot. Remand at 6. Defendants support this assertion primarily by quoting the multiple references to USERRA and EMTALA in the Petition. Defendants also state that their motive is at issue in plaintiff's claims for intentional infliction of emotional distress ("IIED") and for punitive damages and, therefore, even if plaintiff's references to federal statutes relate only to motive, motive is at issue in the Petition.

While the defendants' intent is an element of plaintiff's IIED claim, see, e.g., Gibson v. Brewer, 952 S.W.2d 239, 249 (Mo. 1997) (en banc), the claim does not present a substantial federal question. It is not necessary for plaintiff to prove that the defendants violated federal law to show they acted with the intent to cause him severe emotional distress. Plaintiff's IIED claim is nothing like the quiet title claim in Grable, as it does not present a substantial question of federal law that would be controlling in the case, but rather is a classic state court tort claim.

Defendants' assertion concerning punitive damages also fails to establish federal question jurisdiction. As a threshold matter, "There is no independent cause of action for punitive damages under either federal or Missouri law." Jackson v. Wiersema Charter Serv., Inc., 2009 WL 1310064, at *3 (E.D. Mo. May 11, 2009). Defendants have cited no authority to show that a case may be removed to federal court based on a type of recovery that is merely incidental to the cause of action.

9

Further, plaintiff does not need to prove that the defendants violated federal law to establish that they acted with an evil motive or with reckless indifference to his rights. See Gilliland v. Missouri Athletic Club, 273 S.W.3d 516, 520 (Mo. 2009) (en banc) (standard for imposition of punitive damages under Missouri law).

Finally, defendants cite Yount v. FedEx Express, 2009 WL 4884418 (W.D. Tenn. Dec. 7, 2009), in support of removal. Defs.' Opp'n Mot. Remand at 8. Defendants state that Yount was properly removed to federal court where the plaintiff alleged violations of USERRA along with state law retaliation claims. It is an unremarkable proposition that a case alleging a violation of USERRA may be properly removed to federal court. In Yount, unlike this case, there was no dispute that the plaintiff's state petition contained a USERRA claim, and no dispute that removal was proper. Yount did not concern a motion to remand or a dispute as to whether the plaintiff actually asserted a USERRA claim, but rather addressed a motion to dismiss the USERRA and other claims as not properly pleaded. Yount therefore offers no support for the removal of this case.

For the foregoing reasons, the Court concludes that defendants have failed to meet their burden to prove that all prerequisites to jurisdiction are satisfied, as they have not shown that the state law claims in plaintiff's Petition necessarily raise a question of federal law so substantial and disputed as to warrant the exercise of federal question jurisdiction. "This case cannot be squeezed into the slim category Grable exemplifies." Empire, 547 U.S. at 701. As a result, the Court lacks subject matter jurisdiction over this case and it must be remanded to state court. See 28 U.S.C. § 1447(c). Plaintiff's request for attorneys' fees associated with the removal will be denied. Defendants' motion for more definite statement remains pending for resolution by the state court following remand.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to remand the case to state court is **GRANTED**. [Doc. 11]

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the Circuit Court of the City of St. Louis, State of Missouri, under 28 U.S.C. § 1447(c).

An appropriate Order of Remand will accompany this Memorandum and Order.

                                            **CHARLES A. SHAW**
                                            **UNITED STATES DISTRICT JUDGE**

Dated this  5th  day of July, 2012.